# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIKORSKY AIRCRAFT CORPORATION and HELICOPTER SUPPORT, INC., | ) ) ) ) | CIVIL ACTION NO. 310 CV 00954 (CSH) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| LLOYDS TSB GENERAL LEASING (NO. 20) LIMITED, COUGAR HELICOPTERS, INC., UNDERWRITERS AT LLOYD'S OF LONDON, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, GLOBAL AEROSPACE UNDERWRITING MANAGERS, GCAN INSURANCE COMPANY, UNDERWRITERS AT LLOYD'S per CATLIN CANADA INC. and AIG AVIATION INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | x | |

**DECLARATION OF TIMOTHY COOKE IN SUPPORT OF
LLOYDS TSB GENERAL LEASING (NO. 20) LIMITED'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

UNITED KINGDOM OF GREAT BRITAIN  )
    AND NORTHERN IRELAND           )   ss:
CITY OF LONDON                    )

I, TIMOTHY COOKE, do hereby declare and say:

1. I am a citizen and resident of the United Kingdom and am a director of LLOYDS TSB GENERAL LEASING (NO. 20) LIMITED ("L-GEN 20"), a company incorporated under the laws of England and Wales and a wholly-owned subsidiary of Lloyds TSB Leasing Limited, which is also incorporated under the laws of England and Wales. (To clarify, L-GEN 20 is incorporated in only one jurisdiction, that of "England and Wales."). Lloyds TSB Leasing Limited is a wholly-owned subsidiary of Lloyds TSB Bank plc, another company incorporated under the laws of England and Wales. Lloyds TSB Bank plc is a wholly-owned subsidiary of ultimate parent Lloyds Banking Group plc ("LBG"), a Scottish company, except that one ordinary share of Lloyds TSB Bank plc stock is held by each of two English-incorporated affiliates of LBG. Each of Lloyds TSB Leasing Limited, Lloyds TSB Bank and LBG maintains its registered office in the United Kingdom.

2. I am submitting this Declaration in support of L-GEN 20's motion to dismiss this action as against it on various grounds, including lack of personal jurisdiction over L-GEN 20 and other defenses related to subject matter jurisdiction and venue with respect to all defendants. I make this Declaration on the basis of my personal knowledge and consultations with others employed by LBG-subsidiary companies. This Declaration is true and accurate to the best of my knowledge and belief after speaking with other employees of LBG-subsidiary companies in the United Kingdom, including persons who have been appointed attorneys-in-fact by L-GEN 20 to act on its behalf. I have also reviewed the allegations in plaintiffs' Third Amended Complaint in this action.

2

710823v.1

3. L-GEN 20 was incorporated at the Registrar for Companies in England and Wales on May 16, 2005, and maintains its registered office at 25 Gresham Street in London. L-GEN 20's only business has been providing financing for the purchase of helicopters. To date, L-GEN 20 has provided financing in a total of six separate transactions involving the acquisition of six discrete helicopters manufactured by plaintiff SIKORSKY AIRCRAFT CORPORATION ("SAC").

4. L-GEN 20 is an ongoing business and a separate and independent person under the applicable law of England and Wales. It has provided financing to aircraft and helicopter operators and was the legal owner of the helicopter involved in the accident described below at the time it occurred. (COUGAR HELICOPTERS, INC., or "COUGAR," further identified in paragraph 17 below, was the registered owner of the helicopter under the Canadian Aeronautics Act.) L-GEN 20's signatories consist of its directors and attorneys-in-fact.

5. The instant litigation arises out of the loss of a helicopter acquired through L-GEN 20 financing, a Sikorsky S-92A Model, Manufacturer Serial Number ("MSN") 920048, Canadian Registration Number C-GZCH (the "Helicopter"). SAC sold the Helicopter to CHC Helicopter Corporation ("CHC"), a Canadian corporation, pursuant to "S-92 New Helicopter Sales Agreement," Contract No. 92I003038, dated January 29, 2004 ("Purchase Agreement"), which covered the sale of twelve helicopters scheduled for delivery at staggered dates beginning in November 2004 and ending in March 2007. A copy of the Sales Agreement is attached as Exhibit "A" hereto.

3

6.     CHC (as "CHC"), SIKORSKY (as "Manufacturer"), and L-GEN 20 (as "Owner") entered into a Novation Agreement dated October 27, 2006, a copy of which is attached hereto as Exhibit "B." According to the Novation Agreement "Recitals," these parties had agreed that L-GEN 20 would "buy [the Helicopter] from the Manufacturer in place of CHC," and CHC Helicopters International, Inc. ["CHCII," upon information and belief a CHC subsidiary and also a Canadian company] would "hire the Aircraft from the Owner under the terms of a hire purchase agreement to be entered into between the Owner and CHCII."

7.     The Novation Agreement identified CHC as "registered in Canada" with its head office in Richmond, British Columbia. L-GEN 20 identified itself as a company incorporated under the laws of England and Wales with a registered office in London. SAC identified itself as a Delaware corporation based in Connecticut.

8.     In Article 2.2 of the Novation Agreement, SAC discharged CHC from most of its obligations under the Purchase Agreement, and L-GEN 20 agreed:

> to assume the rights and liabilities of CHC under the Purchase Agreement in respect of the Aircraft (other than the Excluded Obligations) and undertakes to perform the obligations of CHC under the Purchase Agreement in respect of the Aircraft (other than the Excluded Obligations) and to be bound by the terms of the Purchase Agreement in respect of the Aircraft (other than in respect of the Excluded Obligations) in every way as if the Owner had been party to the Purchase Agreement as the "buyer" as at the date it was executed.

Novation Agreement, Art. 2.2(c). "Excluded Obligations," incidentally, refers to "the obligation of CHC to insure the Aircraft" in accordance with Purchase Agreement requirements.

4

710823v.1

9.  In Article 10 of the Novation Agreement, L-GEN 20 agreed to receive "every notice, request or demand or other communication under this Agreement" by first-class prepaid mail at a designated address in London. CHC agreed to receive "every notice, request, or demand" at its address in Richmond, British Columbia.

10. Article 10 notice requirements do not cover service of process, and there are no provisions in the Novation Agreement pertaining to service of process upon L-GEN 20. CHC, in contrast, undertook in Article 12.4 to "maintain an agent for service of process in England," identified the agent by name and address, and stipulated that "any writ, summons, judgment or other notice of legal process shall be sufficiently served on CHC if delivered to such agent at its address..."

11. Article 11 of the Novation Agreement provides in part:

> [11.1] In respect of the Aircraft, this Agreement shall be construed as one with the Purchase Agreement and provisions contained in the Purchase Agreement in respect of the Aircraft which are inconsistent with the terms of this Agreement shall cease to apply.
>
> [11.2] In the event of any conflict between the terms of this Agreement and the Purchase Agreement, the terms of this Agreement shall prevail.

12. Article 12.1 of the Novation Agreement provides that "[t]his Agreement shall be governed by, and construed in all respects in accordance with English law," and Article 12.2 conferred jurisdiction over English courts to "hear and determine" any suit arising out of or in connection with the Agreement.

13. Article V(5) of the original Purchase Agreement provided that that Agreement "shall be governed by the laws of the State of Connecticut." There is no choice of forum clause.

14.     L-GEN 20 and CHCII (which is not a party to this proceeding) concurrently executed "Hire Purchase Agreement relating to one Sikorsky S92A Helicopter with manufacturer's serial number 920048," dated October 27, 2006 ("Hire Purchase Agreement"). A copy is attached as Exhibit "C" hereto. CHCII does not identify its place of incorporation in the Hire Purchase Agreement, but the Richmond, British Columbia address of its head office is the same as that of its corporate parent, CHC, a Canadian company.

15.     Article 18.10 of the Hire Purchase Agreement states that "[t]his Agreement is governed by and shall be construed in accordance with the laws of England," and the parties further agree to the exclusive jurisdiction of English courts with respect to any dispute arising out of or in connection with it. Nowhere in the Hire Purchase Agreement does L-GEN 20 agree to submit to jurisdiction in Connecticut.

16.     No one acting in his or her capacity as an L-GEN 20 officer, director, or agent has ever negotiated or executed a contract in Connecticut or taken any steps relevant to any such contract in Connecticut. Andrew Robertson, an employee of Lloyds TSB Bank plc with the job title Director, Corporate Asset Finance in London, would have represented L-GEN 20 during any negotiations and drafting of these Agreements and would have done so in London, England and Glasgow, Scotland. Alexandra Ball, an employee of Lloyds TSB Bank plc with the job title Director WMTT Legal, and authorised signatory for L-GEN 20 by way of power of attorney, signed the Novation Agreement and Hire Purchase Agreement in London, England.

17.     CHCII leased the Helicopter to co-defendant COUGAR pursuant to "Aircraft Lease General Terms Agreement, No. 1005" dated March 13, 2007 ("Lease Agreement"). L-

GEN 20 is not a party to the Lease Agreement but submits a copy for informational purposes as Exhibit "D" hereto. According to the preamble, COUGAR is a company incorporated under Canadian law and its principal place of business is at St. John's International Airport in Newfoundland. Article 15.8 provides that it shall be governed and construed in accordance with the laws of the Province of British Columbia, Canada.

18.   I have been informed that COUGAR accepted final delivery of the Helicopter from SAC on April 12, 2007 under a Certificate of Acceptance.

19.   As previously noted, L-GEN 20 has provided financing in six separate transactions. All six related to the acquisition of Sikorsky helicopters. L-GEN 20 simply provided the financing for owner-operators, and no L-GEN 20 representative travelled to Connecticut to negotiate or execute any documents or to inspect any aircraft or for any other reason whatsoever in connection with these other transactions.

20.   Returning to the Helicopter at issue here, the following short report appears on the website of the U.S. National Transportation Safety Board ("NTSB"):

> On March 12, 2009, about 0926 ADT, Atlantic Daylight Time, a Sikorsky S-92A helicopter, Canadian registry C-GZCH, operated by Cougar Helicopters, impacted the waters of the North Atlantic about 28 miles east of Cape Spear near St. John's, Newfoundland. There were two pilots and 16 passengers on board the helicopter. One passenger survived with serious injuries, but the other occupants were fatally injured. The helicopter was en route from St. John's International Airport (CYYT) to an offshore oil platform in the Hibernia oil field. The pilot made a MAYDAY call due to a mechanical difficulty, and was returning to St. John's at the time of the accident. Visual meteorological conditions prevailed at the time of the accident, and the sea state had 3-5 meter swells. An instrument flight rules (IFR) flight plan was filed.

Incidentally, the NTSB website notes that "[t]his investigation is under the jurisdiction of the Government of Canada" and that "[t]his report is for informational purposes only and contains only information released by or obtained for the Government of Canada." No preliminary report summary is available on the Canadian TSB website, hence the reference to the NTSB.

21.     The Helicopter was completely destroyed in the March 12, 2009 accident. L-GEN 20 was its legal owner at the time of the accident.

22.     As previously noted, L-GEN 20 is incorporated under the laws of England and Wales and its registered office is in London, England. L-GEN 20 has no other offices anywhere, including Connecticut. Furthermore:

- L-GEN 20 does not have and never has had an office, mailing address, or telephone number in Connecticut;

- L-GEN 20 does not have and never has had a subsidiary or joint venture partner in Connecticut. As stated in paragraph 1 above, L-GEN 20's corporate parent (i.e., the owner of all of its shares) is Lloyds TSB Leasing Limited a company incorporated under the laws of England and Wales which maintains its registered address in London;

- L-GEN 20 is not and has never been incorporated, registered, or licensed to do business in Connecticut;

- L-GEN 20 does not have and never has had a registered agent for service of process in Connecticut;

- L-GEN 20 does not have and never has had any corporate officers or directors residing in Connecticut;

- L-GEN 20 has never held a stockholders or board of directors meeting in Connecticut;

- L-GEN 20 does not have and never has had any employees in Connecticut;

8

- L-GEN 20 has never advertised its services in Connecticut, nor targeted Connecticut residents with advertisements;

- L-GEN 20 does not maintain and never has maintained a website;

- No one acting in his or her capacity as an officer, director, or agent of L-GEN 20 has ever participated in a convention or trade show in Connecticut or recruited or attempted to recruit employees in Connecticut;

- L-GEN 20 does not maintain, and never has maintained, any permanent exhibits, displays, or demonstrations in Connecticut;

- L-GEN 20 does not have and never has had a bank account or investments of any kind in Connecticut;

- L-GEN 20 has never acted as an insurer, surety, or guarantor for any property or person in Connecticut;

- L-GEN 20 does not own, lease, rent, or control real property or leaseholds in Connecticut, and never has done so;

- L-GEN 20 does not own or lease any personal property in Connecticut that is in L-GEN 20's immediate possession or control (L-GEN 20, as owner, leases personal property and lessees may unilaterally transport such property to Connecticut without L-GEN 20's knowledge);

- L-GEN 20 is not obligated and never has been obligated to pay any taxes in Connecticut and accordingly has never paid any taxes in Connecticut; and

- L-GEN 20 has never been a plaintiff, petitioner, claimant or the like in any litigation or arbitration matter in Connecticut.

23.   L-GEN 20 provides financing to operators so that the operators can acquire aircraft and helicopters for their fleet. L-GEN 20 does not itself operate aircraft or helicopters. It simply receives payments from lessees, who also have L-GEN 20 added as an additional insured under their hull insurance policies.

710823v.1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 15th, 2010, at London, England.

_____
TIMOTHY COOKE